UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KIMBERLY HOROSKI,<br><br>                                 Plaintiff,<br><br>      -against-<br><br>BROOKHAVEN MEMORIAL HOSPITAL,<br><br>                                 Defendant. | **COMPLAINT**<br><br>Jury Trial Demanded<br><br>Docket No.: |

Plaintiff, Kimberly Horoski ("Plaintiff"), by and through her attorneys, The Law Office of David H. Rosenberg, P.C., complaining of Defendant Brookhaven Memorial Hospital ("Brookhaven") herein, alleges upon knowledge as to herself and her own actions, and upon information and belief as to all other matters, as follows:

### JURISDICTION AND VENUE

1. This action is brought pursuant to Americans with Disabilities Act, 42 U.S.C. 12101, *et seq.*; and any other cause of action which can be inferred from the facts set forth herein.

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3), and 28 U.S.C. § 1343(a)(4).

3. Venue is proper pursuant to 28 U.S.C. § 1391.

4. All prerequisites to the institution of this action have been met. A charge of discrimination was duly filed with the Equal Employment Opportunity Commission and a Notice of Right to Sue was mailed to Plaintiff on or around October 24, 2017. Plaintiff received the Notice of Right to Sue on October 26, 2017 and this action has been filed within ninety (90) days of receipt of the issuance of the aforementioned Notice of Right to Sue.

1

## PARTIES

5. At all relevant times, Plaintiff was an employee of Brookhaven.

6. At all relevant times, Brookhaven was and still is a hospital duly existing pursuant to, and by virtue of, the laws of the State of New York, with its principal place of business at 101 Hospital Road, Patchogue, New York 11772.

7. At all relevant times, Plaintiff generally reported to work at Brookhaven's office located at 101 Hospital Road, Patchogue, New York 11772.

## FACTS

8. On March 9, 2002, Kim commenced part-time employment with Brookhaven as a Registrar for the Patient Access Department.

9. Due to sheer hard work and dedication to the job, Kim was promoted in April 2005 to Patient Access Coordinator, a full-time position; in June 2009 to Nursing Operations Manager; in January 2011 to Nursing Quality Management Data Analyst, and in January 2012 to Department Head of Patient Access with the title of Manager.

10. In September 2014, Brookhaven employee Christina Arkali ("Arkali", Nurse Practitioner) told Kim that there was a "change in your heart rhythm" and instructed her to go to the Company's emergency room. Kim told her superior, Scott Mathesie ("Mathesie", Senior Director of Revenue Cycle), about the change in heart rhythm and instruction to go to the emergency room. At the Company's emergency room, Dr. Ito (first name unknown, Physician) said, "You have a faint murmur." Dr. Ito instructed Kim to go home. Arkali told Kim that, "You need to be cleared to come back to work." Kim told Mathesie about the heart murmur and that she needed to be cleared.  After 10 days, Kim was cleared to, and did so, return to work.

11. In or around September 2015, Kim told Mathesie that she had been fitted with a pacemaker.

12. On April 5, 2016, Kim told Mathesie that Shelia Hylton ("Hylton", Manager of Patient Accounting), a non-disabled employee, had forgotten to create the virtual cash drawers making it impossible for Kim to commence the copay project program ("Copay Project"). No corrective or disciplinary action was taken against Hylton.

13. On May 25, 2016, Brookhaven employee Dr. Mapley (Physician, first name unknown at this time) told Kim generally, "Your pacemaker has gone into end of life." Arkali told Kim generally, "You need to be medically cleared to return to work." Kim told Mathesie, via text through her Company cell phone, that her pacemaker had gone into "end of life". Mathesie responded generally, "Take as much time as you need to get back to work."

14. In or around May 2016, Kim requested July 28 and 29 for vacation days off from Mathesie.

15. On May 26, 2016, Kim was told by her private physician, Dr. Verga, that she should request time off from work so that she could get a new pacemaker. Kim then requested a reasonable accommodation in the form of asking for time off to seek the required treatment. To this point, Kim filled out Company FMLA paperwork and submitted it to Brookhaven. Kim also told Mathesie that she needed time off to get the new pacemaker and was unsure when she would be able to return. Kim was granted medical leave from work until July 25, 2016.

16. On or around June 1, 2016, Mathesie asked Kim generally, "Can you work from home?" Kim responded generally, "That's fine. How do I do it?" Mathesie asked Kim to email him weekly the total amount of time spent on work assignments. Kim complied with the request and began working from home. From May 26, 2016 through July 18, 2016, Kim received her regular salary.

17. On or around July 18, 2016, Mathesie said, "We're not going to allow you to work from home anymore." Kim said, "I'm going to contact HR because my FMLA was denied." Mathesie

3

told Kim, "It was denied because you worked from home after filling it out. HR told me that I am not allowed to have you work from home." Because of this, Kim stopped receiving her regular salary until July 25, 2016. Other non-disabled/perceived disabled employees, and other employees who did not request reasonable accommodations, were not treated this way.

18. On July 25, 2016, Kim returned to work. Mathesie said generally, "Brenda [Ferrell] was not happy that I allowed you take the 28th and 29th off." Other non-disabled/perceived disabled employees, and other employees who did not request reasonable accommodations, were not treated this way.

19. On July 26, 2016, Kim told Mathesie that Hylton had still not created the virtual cash drawers making it impossible for Kim to commence the Copay Project. No corrective or disciplinary action was taken against Hylton. Instead, Mathesie asked Kim, "Why has this not been done?" Kim told Mathesie that Hylton had still not created the virtual cash drawers making it impossible for her to commence the Copay Project. Other non-disabled/perceived disabled employees, and other employees who did not request reasonable accommodations, were not treated this way.

20. On July 28 and 29th, Kim took vacation days off from work.

21. On August 1, 2016, Kim returned to work.

22. Between August 1, 2016 and November 2016, Mathesie would typically ask on a daily to weekly basis words to the effect of, "Are you ok"; "How are you feeling"; and "Is everything alright". Kim would typically respond, "You know what's going on. I've kept you in the loop." Other non-disabled/perceived disabled employees, and other employees who did not request reasonable accommodations, were not treated this way.

23. On November 9, 2016, Kim was terminated by Mathesie "for performance." Other non-disabled/perceived disabled employees, and other employees who did not request reasonable accommodations, were not treated this way.

24. On November 10, 2016, Mathesie sent a mass email to Company employees advising that Kim "has left the organization to pursue other opportunities." Even though Kim was terminated for "performance", Mathesie added, "We thank [Kim] for her contributions and years of service with Brookhaven Memorial Hospital." Other non-disabled/perceived disabled employees, and other employees who did not request reasonable accommodations, were not treated this way.

25. Kim's job duties and responsibilities have been given to non-disabled/perceived disabled employees who did not request reasonable accommodations.

26. On February 23, 2017, an executed Verified Complaint was filed with the New York State Division of Human Rights.

27. On October 26, 2017, Kim received a right to sue from the United States Equal Employment Opportunity Commission.

## CLAIMS FOR RELIEF

28. Defendant subjected Plaintiff to adverse employment actions, chiefly being her termination, as well as an atmosphere of adverse employment actions based on her disability and based upon her participation in a protected activity, namely requesting reasonable accommodations and complaints about the failure to provide reasonable accommodations, and opposition to discriminatory practices. These actions by Defendant are in violation of the Americans with Disabilities Act, 42 U.S.C § 12101, *et seq*.

29. Plaintiff suffered, and continues to suffer, economic and emotional damages as result of the discriminatory and retaliatory treatment and termination.

WHEREFORE, Plaintiff demands judgment against Defendant for all compensatory, emotional, physical, and punitive damages (where applicable), lost pay, front pay, injunctive relief, reinstatement and any other damages permitted by law. It is further requested that this Court grant reasonable attorneys' fees and the costs and disbursements of this action and any other relief to which Plaintiff is entitled. Plaintiff demands a trial by jury.

Dated: Mineola, New York  
       January 16, 2018

THE LAW OFFICE OF DAVID H. ROSENBERG, P.C.

_____  
DAVID H. ROSENBERG  
*Attorneys for Plaintiff*  
The Law Office of David H. Rosenberg, P.C.  
170 Old Country Road, Suite 600  
Mineola, N.Y. 11501  
Ph: (516) 741-0300  
F: (516) 385-4848